Filed 10/31/25  Estate of Dallal CA2/1
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| Estate of GAMRA DALLAL, <br><br> Deceased. <br> ——————————————— <br><br> EDMON DALLAL, <br><br> Petitioner and Appellant, <br><br> v. <br><br> MARK DALLAL et al., <br><br> Objectors and Respondents. | B340100 <br><br> (Los Angeles County <br> Super. Ct. No. 19STPB02093) |

Appeal from an order of the Superior Court of Los Angeles County, Gus T. May, Judge.  Reversed and remanded with directions.

Mark W. Straface for Petitioner and Appellant.

No appearance for Objectors and Respondents.

———————————————————

In 2019, Edmon Dallal filed a Probate Code section 850 petition against his brother and sister-in-law, Mark and Hilda Dallal.[1]  The petition alleged that Mark and Hilda had misappropriated funds from Gamra Dallal, Edmon and Mark's deceased mother, decreasing Edmon's inheritance by approximately $50,000.  Over the next four years, Edmon filed a series of amended petitions, increasing his alleged losses from $50,000 to more than $200,000, and adding Bank of America, N.A. (BANA) as a respondent.  Edmon served each petition via email.  Mark and Hilda expressly waived service of the first amended petition, and they never raised any objection to email service of the original or second amended petitions.  Instead, they litigated Edmon's claims on the merits.

After Edmon filed the operative third amended petition and served a copy via email on Mark and Hilda's attorney, the attorney substituted out of the action.  At the December 2023 hearing on the petition, Mark and Hilda appeared in propria persona and requested additional time to hire a new attorney and respond to the petition.  They did not raise any objections to service or notice.  The trial court, however, raised the issue of service sua sponte and told Edmon that service on Mark and Hilda's former counsel was inadequate.  The court directed Edmon to serve Mark and Hilda in their individual capacities.  When Edmon failed to do so, the court denied the third amended petition for failure to complete service.

Edmon now asks us to reverse.  He contends by generally appearing in the action, Mark and Hilda forfeited any objection to defective service.  We agree.  Accordingly, we reverse and remand with directions that the court reinstate the third amended petition.

---

[1] We refer to the parties by their first names for clarity.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY

We summarize here only the facts and procedural history relevant to our resolution of this appeal.

On March 6, 2019, Edmon filed a probate petition asserting seven claims against Mark and Hilda. That same day, Edmon's counsel sent an email to Mark and Hilda, then representing themselves, asking them to accept email service of the petition. Hilda did not respond, but Mark responded via email, "Yes, I approve." On May 15, 2019, Mark and Hilda filed their joint answer,[2] in which they disputed Edmon's claims on the merits. The answer did not include any jurisdictional objections.

After Mark and Hilda retained attorney Yona Conzevoy (the first of four attorneys to appear on their behalf in the action), they continued to litigate the merits of the petition. For example, Mark and Hilda filed a substantive opposition to Edmon's unsuccessful August 2021 motion for summary adjudication. In the opposition, they did not raise any challenges to jurisdiction, service, or notice. Rather, they argued, inter alia, that Edmon had failed to establish various elements of his causes of action.

In November 2022, Conzevoy ceased representing Mark and Hilda and attorney Jack Esenten substituted in as Mark and Hilda's counsel of record. In December 2022, the parties entered a written stipulation permitting Edmon to file a first amended petition. Pursuant to the stipulation, Mark and Hilda "waive[d] notice and service of the first amended petition . . . and . . . [were] not . . . required to answer the . . . petition and . . .

---

[2] The answer does not appear in our appellate record. Pursuant to Evidence Code section 452, subdivision (d), we take judicial notice of the answer on our own motion.

3

the allegations thereof [were] deemed denied." (Capitalization omitted.)

The first amended petition named BANA as an additional respondent and deleted some and added some claims, but the crux of Edmon's allegations—that Mark and Hilda misappropriated Gamra's funds, leading to a reduction in Edmon's inheritance—remained unchanged.

BANA demurred, and on June 28, 2023, Edmon filed a second amended petition adding a new cause of action for negligence against BANA alone. Because Mark and Hilda's attorney, Esenten, had died a month earlier, Edmon served the petition via email on Mark and Hilda using their individual email addresses. Edmon's counsel also informed Mark and Hilda via email that "[p]er the terms of the [December 2022] stipulation w[ith] Mr. Esenten, the second amended petition is deemed answered by Mark and Hilda," and "[t]hey need not file an answer unless the court so orders." (Capitalization omitted.) Mark and Hilda never filed an answer to the second amended petition.

On August 1, 2023, BANA again demurred. While the demurrer was pending, Edmon filed another motion for summary adjudication of his claims against Mark and Hilda. On September 12, 2023, Mark and Hilda, through their new counsel, Robert Risley, filed an objection to Edmon's motion for summary adjudication. They argued the motion was premature because they had not yet filed an answer to the second amended petition. But they did not challenge jurisdiction or service.

In response, Edmon argued he believed the December 2022 stipulation—pursuant to which Mark and Hilda "waive[d] . . . service of the first amended petition and . . . [were] not . . . required to answer [it]"—applied to the second amended petition. (Capitalization omitted.)

4

At hearings in October and November 2023, at which Risley appeared on Mark and Hilda's behalf, the court sustained BANA's demurrer to the second amended petition and denied Edmon's motion for summary adjudication on the merits. The court, however, agreed with Edmon that the stipulation concerning the first amended petition should apply to the second amended petition:

"[T]he court recalls that stipulation that was filed. And [Edmon's counsel] is correct, we were doing [Mark and Hilda] a courtesy by not having them incur the additional filing fee in connection with an amendment—or an objection to this amended petition. So I'm going to stick with the courtesy that was provided [to] them, say they saved the filing fee, no need to file an additional answer. The court deemed that original answer the one to this one."

On November 14, 2023, Edmon filed a third amended petition, which included more detailed allegations against BANA. Edmon served the petition on Mark and Hilda via email through their counsel, Risley. Edmon did not send the petition to Mark's and Hilda's individual email addresses. Two weeks later, on November 29, 2023, Risley substituted out of the case.

On December 15, 2023, the court held a hearing on the third amended petition. Mark and Hilda appeared in propria persona. They did not raise any objections to jurisdiction, service of the petition, or notice of the hearing. Instead, they requested "a continuance of 60 days in order to hire a new attorney to file objections to the third amended petition." The court, however, stated it was "not ready to order objections" because Edmon had not properly served the petition. In particular, the court found that service of the petition on Risley was inadequate because he had substituted out of the action:

5

"The court: . . . I don't see a proof of service here yet. What is the status of that?

"[Edmon's counsel]: I served all parties, Your Honor.

"The court: Have you filed the proof of service?

"[Edmon's counsel]: Well, I'll file a proof of service.

"The court: So I don't see anything in the file. The one that you've got that was filed or that was dated November 14th isn't going to be sufficient since it's counsel and they are not represented.

"[Edmon's counsel]: Well, at the time they were represented.

"The court: Okay. But it still has to be served on them. I don't know that that would suffice for a service unless I had counsel here to be able to indicate that he accepted on their behalf, and we can't do that.

"[Edmon's counsel]: Understood, Your Honor. I'll file a proof of service that they were served."

Edmon's counsel, however, never served the third amended petition on Mark and Hilda in propria persona. Nor did he serve the third amended petition on Michael S. Quintiliani, the next attorney Mark and Hilda retained to represent them in the proceeding.

The court therefore set an "order to show cause hearing re[garding] why the [third amended] petition should not be denied without prejudice as to [Mark and Hilda] for lack of service." (Capitalization omitted.) In advance of the hearing, Edmon refiled the proof of service indicating he had served the third amended petition on Mark and Hilda's former counsel, Risley, by email on November 14, 2023. In addition, Edmon's counsel filed two declarations attesting to his service of the third amended petition and requesting leave of court to cure any defects in service.

At the June 13, 2024 order to show cause hearing, the court placed all parties under oath. Although no transcript or settled

6

statement appears in our record, Edmon contends that Mark and Hilda's attorney, Quintiliani, "repeated the false assertion that [Mark and Hilda] were not served [with the third amended petition]." Edmon further contends his counsel "presented sworn testimony that [Mark and Hilda] agreed to email service, that [Mark and Hilda] stipulated to waive service of amended petitions, [and] that despite the waiver, [Mark and Hilda's] counsel was served by email as a c[o]urtesy." (Capitalization omitted.) At the conclusion of the hearing, the court denied the third amended petition as to Mark and Hilda without prejudice "for failure to complete service."

On August 2, 2024, Edmon filed a notice of appeal challenging the June 13, 2024 order.

## DISCUSSION

### A. Appealability

In his form notice of appeal, Edmon checked the box designating the June 13, 2024 order as a "[j]udgment of dismissal under Code of Civil Procedure[3] [sections] 581d, 583.250, 583.360, or 583.430." As relevant here, section 583.250 requires the trial court to dismiss an action for failure to make timely service. (See § 583.250.) Section 581d, in turn, provides that a written dismissal order "*signed by the court* and filed in the action . . . constitute[s] [a] judgment[ ] and [is] effective for all purposes." (§ 581d, italics added.)

Because the June 13 order denying the third amended petition is unsigned, we directed Edmon to file a letter brief addressing why his appeal should not be dismissed as premature.

---

[3] Subsequent statutory references are to the Code of Civil Procedure.

7

(See *Rios v. Klaveness* (1969) 2 Cal.App.3d 1077, 1079 [unsigned minute order dismissing action for failure to timely serve summons constituted nonappealable order].)

In his letter brief, Edmon urges us to treat the unsigned order denying the petition as an appealable judgment because (1) the order fully resolves his claims against Mark and Hilda, and (2) the statute of limitations would prevent Edmon from refiling his claims.

In support of his request, Edmon relies on *Estate of Dito* (2011) 198 Cal.App.4th 791 (*Dito*). The appellants in *Dito* sought to challenge an order sustaining a demurrer without leave to amend— a nonappealable order. (*Id.* at p. 799.) Although the appellants conceded they had failed to secure an appealable order of dismissal, they "argue[d] that where it is clear the court intended to entirely dispose of the action, [the appellate court is] empowered to amend the order to make it an appealable judgment of dismissal." (*Id.* at pp. 799-800.) The appellate court agreed:

"The order sustaining [the] demurrer was a final adjudication of all of the causes of action contained in the petition. No purpose would be served by dismissing the appeal and requiring appellants to file a new appeal after securing a judgment of dismissal in the trial court. [Respondent] has not been prejudiced or misled by the failure to secure a judgment of dismissal. Indeed, she has not challenged the appealability of the order but has instead responded to the appeal on its merits. Accordingly, we shall amend the . . . order sustaining the demurrer without leave to amend to specify it is a judgment of dismissal as to appellants' petition." (*Dito, supra,* 198 Cal.App.4th at p. 800.)

Here, as in *Dito*, the order denying the third amended petition fully resolves all of Edmon's claims against Mark and Hilda. In addition, Mark and Hilda have not challenged the appealability of

8

the order.  (Indeed, neither Mark nor Hilda has filed a respondent's brief on appeal.)  Accordingly, we deem the June 13, 2024 order an appealable judgment and proceed to address Edmon's claims.

### B.  Mark and Hilda Forfeited Any Objection to Inadequate Service by Generally Appearing in the Action

Edmon contends that, by generally appearing in the action, Mark and Hilda forfeited any objection to inadequate service of the third amended petition.  We agree.

Service of process asserts jurisdiction over a defendant and provides the defendant with notice of the action and an opportunity to present a defense.  (*Crane v. Dolihite* (2021) 70 Cal.App.5th 772, 784.)  "Defective service of the petition and notice to appear is not cured by actual notice of the action.  'Nonetheless, defective service is not fatal to personal jurisdiction if the defendant consents to jurisdiction over him or her by making a general appearance in the action.' [Citations.]" (*In re R.L.* (2016) 4 Cal.App.5th 125, 146 (*R.L.*).)

"The statutory list of acts constituting [a general] appearance," such as filing an answer, demurrer, or motion to strike, "is not exclusive." (*Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1147 (*Hamilton*), citing § 1014.)  " '[R]ather[,] the term may apply to various acts which, under all of the circumstances, are deemed to confer jurisdiction of the person. [Citation.]  What is determinative is whether defendant takes a part in the particular action which in some manner recognizes the authority of the court to proceed.' [Citation.]  [¶]  The issue is thus fact-specific." (*Hamilton*, *supra*, at p. 1147.)

We are not persuaded by Edmon's argument that Mark and Hilda's appearance at the December 15, 2023 hearing, standing alone, constituted a general appearance.  Mark and Hilda appeared

9

on December 15 to request a continuance to respond to the third amended petition, and "[a] request for a continuance to file a responsive pleading is not itself a general appearance." (*In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 13, fn. 7, citing § 418.10, subd. (d); see § 418.10, subd. (d) ["[n]o default may be entered against the defendant before expiration of his or her time to plead, and *no motion under this section . . . or application to the court or stipulation of the parties for an extension of the time to plead, shall be deemed a general appearance by the defendant*," italics added].) Although some courts have held that a request for a continuance can constitute a general appearance (see, e.g., *R.L.*, *supra*, 4 Cal.App.5th at p. 148), these decisions do not address section 418.10, subdivision (d) and rely on authority predating the section's enactment.

We nonetheless conclude Mark and Hilda forfeited any objection to personal jurisdiction by generally appearing in the action. They, and attorneys acting on their behalf, appeared at various hearings in the case over the course of more than four years. And they litigated the merits of Edmon's claims, including by filing an answer to the original petition and a substantive opposition to Edmon's motion for summary adjudication. The record thus establishes that Mark and Hilda generally appeared in the action by participating in the case in a manner that recognized the court's authority to proceed. (See *Hamilton*, *supra*, 22 Cal.4th at p. 1147.) In addition, by appearing at the December 15, 2023 hearing, Mark and Hilda demonstrated they had actual notice of the third amended petition—a pleading that, as to Mark and Hilda, merely reasserted the causes of action alleged in earlier petitions.

We therefore conclude the trial court erred by denying the petition here on the ground of purportedly inadequate service. (See *Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114

Cal.App.4th 1135, 1148 ["[a] defendant who has actual knowledge of the action and who has submitted to the authority of the court should not be able to assert a violation of rules which exist only to bring about such knowledge and submission"].)

Accordingly, we reverse the June 13, 2024 order denying the third amended petition for lack of service and remand with directions that the court reinstate the petition. In light of our conclusion, we need not address Edmon's arguments that Mark and Hilda stipulated or otherwise agreed in writing to accept email service of the third amended petition.

### DISPOSITION

The June 13, 2024 order denying the third amended petition as to Mark and Hilda Dallal is reversed. On remand, the trial court is directed to reinstate the third amended petition.

Appellant Edmon Dallal is awarded his costs on appeal.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

BENDIX, J.

M. KIM, J.